IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CHRISTINA M. K.,**[1]

    **Plaintiff,**

    v.

    **Civil Action 2:22-cv-1957**
    **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## OPINION AND ORDER

Plaintiff, Christina M. K. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a Period of Disability and Disability Insurance Benefits ("DIB"). This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 9); the Commissioner's Memorandum in Opposition (ECF No. 11); Plaintiff's Reply (ECF No. 12); and the administrative record (ECF No. 8). For the reasons that follow, Commissioner's non-disability determination is **AFFIRMED,** and Plaintiff's Statement of Errors is **OVERRULED**.

### I. BACKGROUND

Plaintiff filed her DIB application in August 2018, alleging that she had been disabled since June 1, 2016. (R. 13, 188–96.) After Plaintiff's application was denied initially (R. 98, 81–97) and on reconsideration (R. 116, 99–115), a telephonic hearing was held on February 8, 2021,

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

before an Administrative Law Judge ("ALJ"). (R. 36–80.) Plaintiff, represented by counsel, appeared and testified. A vocational expert ("VE") also appeared and testified. On March 2, 2021, the ALJ issued a non-disability determination (R. 10–35), which became final on February 18, 2022, when the Appeals Council denied Plaintiff's request for review (R. 1–6).

Plaintiff seeks judicial review of that final determination. She argues that remand is warranted for several reasons. First, she argues that the ALJ erred when relying on the VE's testimony to find that she could perform jobs that existed in significant numbers in the national economy. (Pl.'s Statement of Errors 8–11, ECF No. 9.) Plaintiff next submits that the ALJ erred by failing to account for her absenteeism when he assessed her residual functional capacity[2] ("RFC"). (*Id*. at 11–15.) Last, Plaintiff contends that the ALJ erred when he evaluated medical opinion evidence. (*Id*. at 15–20.) Defendant correctly contends that Plaintiff's contentions of error lack merit. (Def.'s Mem. in Opp'n, 5–16, ECF No. 11.)

## II. THE ALJ'S DECISION

On March 2, 2021, the ALJ issued the unfavorable determination. (R. 10–35.) The ALJ initially found that Plaintiff's date last insured was March 31, 2020, and thus, Plaintiff needed to establish disability on or before that date to be awarded DIB. (R. 13, 15.) At step one of the

---

[2] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

sequential evaluation process,[3] the ALJ found that Plaintiff had not engaged in substantial gainful activity from June 1, 2016, the alleged date of onset, through March 31, 2020, her date last insured. (R. 15.) At step two, the ALJ found that Plaintiff had the following severe impairments: osteoarthritis of both knees; degenerative changes of the right hip; degenerative disc disease of the lumbar spine; major depressive disorder; and other trauma or stressor-related disorder/posttraumatic stress disorder ("PTSD"). (R. 15–16.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17.)

> Before proceeding to step four, the ALJ assessed Plaintiff's RFC as follows:
>
> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

>sedentary work as defined in 20 CFR 404.1567(a) except that she may never climb ladders, ropes, or scaffolds; can never kneel or crawl; and can occasionally climb ramps or stairs, balance, stoop, and crouch. Claimant may do no operation of leg or foot controls and requires the use of a cane for ambulation. Claimant can understand, remember, and apply information to perform simple, routine, and repetitive tasks; is able to focus on and complete simple, routine, and repetitive tasks and can make simple decisions and adapt to routine changes in the workplace setting. Claimant cannot perform fast-paced jobs, defined here as jobs that involve conveyor belt or assembly line work or that have a per-minute or per-hour production quota; however, a daily production quota is acceptable. Claimant may have no more than occasional contact with the general public, coworkers, and supervisors; and is limited to working in small familiar groups that do not exceed eight to ten in number.

(R. 19.)

At step four, the ALJ relied on testimony from the VE to find that Plaintiff was unable to perform her past relevant work as a cook and a cylinder filler. (R. 27–28.) The ALJ also relied on the VE's testimony at step five to find that given her age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform. (R. 28–29.) The ALJ, therefore, concluded that Plaintiff was not disabled from June 1, 2016, her alleged date of onset, through March 31, 2020, her date last insured. (R. 29.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

4

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV.  ANALYSIS

As previously explained, Plaintiff asserts that reversal is warranted because the ALJ erred when he relied on the VE's unclear testimony; failed to account for Plaintiff's absenteeism when assessing her RFC; and improperly evaluated medical opinion evidence. Each of these contentions of error are addressed though not in the order that Plaintiff has raised them; all are found to be lacking merit.

**A.    The ALJ's Evaluation of Medical Opinion Evidence**

Plaintiff argues that the ALJ erred when evaluating medical opinion evidence from her treating psychiatrist, Indrani Naskar, M.D. This contention of error lacks merit.

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[4] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5).

With regard to two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, when evaluating the persuasiveness of medical opinions and prior administrative findings, an ALJ must consider the following factors: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

Although there are five factors, supportability and consistency are the most important, and an ALJ must explain how he or she considered them. §§ 404.1520c(b)(2); 416.920c(b)(2). When considering supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support a medical opinion, the more persuasive the ALJ should find the medical opinion. §§ 404.1520c(c)(1); 416.920c(c)(1). When considering consistency, the more consistent a medical opinion is with the evidence from other medical

---

[4] Because Plaintiff's DIB application was filed in 2018, it is governed by regulations that apply to applications filed after March 27, 2017.

sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. §§ 404.1520c(c)(2); 416.920c(c)(2). And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id*. Instead, when an ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." §§ 404.1520c(b)(3); 416.920c(b)(3).

Here, Dr. Naskar authored documents on April 22, 2019, and on July 3, 2019. The ALJ summarized the statements in them as follows:

> In July 2019, psychiatrist Indrani Naskar, M.D., opined that claimant was moderately to markedly limited in understanding, remembering, and applying information; mildly to markedly limited in concentrating, persisting, and maintaining pace; mildly to moderately limited in interacting with others; and moderately to markedly limited in adapting or managing herself (Ex. 16F). In April 2019, Dr. Naskar opined that claimant was slightly to markedly limited in understanding instructions, sustaining routines, working around others, maintaining regular attendance, interacting with coworkers and supervisors, and concentrating and maintaining pace. Dr. Naskar opined that claimant would be off-task more than 25% of the workday, and would be absent more than four days per month (Ex. 15F).

(R. 26.) The ALJ then explained that he found Dr. Naskar's opinion only mildly persuasive. He wrote:

> The undersigned finds this opinion only mildly persuasive in that although several of the functional capacity findings are supported by the evidence, it is otherwise inconsistent with the medical evidence and the record as a whole, including the claimant's history of treatment and medications, the mental status examination findings, and the claimant's reported activities of daily living. The evidence supports a finding that the claimant experiences moderate limitations in most "paragraph B" criteria, but marked limitations are unsupported by the evidence and inconsistent with clinical examination findings, including Dr. Naskar's own findings. Such inconsistencies suggest that Dr. Naskar relied quite heavily on the claimant's subjective report of symptoms and limitations, and that she may have uncritically accepted as true most, if not all, of what the claimant reported. Yet, as

> explained above, there exist good reasons for questioning the consistency of the claimant's subjective complaints.

(*Id.*)

As this discussion demonstrates, the ALJ considered the supportability factor and found it wanting. The ALJ explained that Dr. Naskar opined that Plaintiff had marked limitations in several areas, but that this opinion was not supported by clinical examination findings, including Dr. Naskar's own findings, which suggested that Dr. Naskar relied on Plaintiff's subjective reports instead of examination findings when she formulated her opinion. § 404.1520c(c)(1). Moreover, elsewhere in the determination, the ALJ specifically noted that Dr. Naskar's treatment notes reflected that "[Plaintiff] also regularly presented with appropriate hygiene, intact cognition and concentration, cooperative behavior, and intact judgment and insight." (R. 24.)

The record substantially supports the ALJ's supportability analysis. Although Dr. Naskar opined that Plaintiff had marked limitations in understanding and remembering (R. 2315), as the ALJ accurately explained, Dr. Naskar's examinations regularly noted intact cognition, judgment and insight (R. 26). Dr. Naskar regularly found that Plaintiff had average intelligence (R. 2278, 2284, 3956, 3953, 3950, 3947, 3944, 3941, 3938, 3935, 3932, 3925, 3922); logical thought processes (R. 2277, 2283, 3955, 3952, 3949, 3946, 3943, 3940, 3937, 3935, 3932, 3925, 3922); intact judgment (R. 2278, 2284, 3956, 3953, 3950, 3947, 3944, 3941, 3938, 3935, 3932, 3925, 3922); and good insight (R. 2278, 2284, 3956, 3953, 3950, 3947, 3944, 3941, 3938, 3935, 3932, 3925, 3922). With regard to Plaintiff's memory, Dr. Naskar occasionally noted that Plaintiff's short-term memory had "some" impairment (R. 3935, 3932, 3925, 3922), but she also regularly noted that Plaintiff's short-term memory was normal (R. 2278, 2284, 3956, 3953, 3950, 3947, 3944, 3941, 3938). Dr. Naskar also regularly noted that Plaintiff's long-term memory was fair (R. 3935, 3932, 3925, 3922) or normal (R. 2278, 2284, 3956, 3953, 3950, 3947, 3944, 3941, 3938).

8

Likewise, although Dr. Naskar also opined that Plaintiff had marked limitations in concentration and persistence (R. 2315–16), the ALJ explained that Dr. Naskar's examinations regularly found that Plaintiff had intact concentration (R. at 26). The record supports that determination too—the record reflects that Dr. Naskar routinely found that Plaintiff had intact concentration and focused attention. (R. 2277, 2283, 3955, 3952, 3949, 3946, 3943, 3940, 3937, 3934, 3931, 3924, 3921.) As the ALJ also explained, although Dr. Naskar opined that Plaintiff had marked limitations in adaptation (R. 2316), Dr. Naskar's examinations regularly found that Plaintiff had appropriate hygiene (R. 2277, 2283, 3955, 3952, 3949, 3946, 3943, 3940, 3937, 3934. 3931, 3924, 3921). Indeed, Dr. Naskar also regularly wrote that Plaintiff's "ADL Capacity" was normal (R. 2278, 2284, 3956, 3953, 3950, 3947, 3944, 3941, 3938, 3935, 3932, 3925, 3922), and that she had normal behavior (R. 2277, 2283, 3955, 3952, 3949, 3946, 3943, 3941, 3938, 3935, 3932).

The ALJ also considered the consistency factor and found that it too was wanting. The ALJ explained that although Dr. Naskar determined that Plaintiff had marked limitations in areas that corresponded to some of the "paragraph B" criteria, (*i.e.*, understanding and remembering, concentration and persistence, and adaptation), that opinion was inconsistent with medical records and the record as a whole, including Plaintiff's treatment history and medications, mental status examination findings, and her reported activities of daily living. (R. 26.) The record substantially supports the ALJ's consistency analysis.

Specifically, although Dr. Naskar opined that Plaintiff had marked limitations in understanding and remembering (R. 2315), the ALJ found that this was inconsistent with record evidence demonstrating that Plaintiff had only mild limitations in this area. The ALJ explained why he found that Plaintiff only had mild limitations in this area as follows:

9

> In understanding, remembering, or applying information, the claimant had a mild limitation. Claimant alleges that she struggles with remembering information at times (Ex. 3E; Hearing Testimony). However, the record reflects that claimant routinely presented to treatment providers with memory and cognition within normal limits, and that she was able to relate her treatment history to providers (Exs. 17F; 2F/23, 29; 5F/102; 22F/48, 238, 314; 3F/78, 127, 317; 8F/1, 7-8; 32F/26-27, 29-30, 36-37, 39-40, 42-43, 48-49, 54-55). Moreover, claimant has reported engaging in activities that demonstrate her capacity in this domain, including driving short distances at times, shopping, caring for her special-needs son, and paying bills (Ex. 3E; Hearing Testimony).

(R. 18.) Substantial evidence supports the ALJ's determination. As the ALJ explained, Plaintiff routinely presented with her cognition within normal limits. (*Id.*) The record supports that determination. For instance, on December 5, 2016, an occupational therapist wrote that Plaintiff's overall cognitive status was within normal limits, that she was "oriented x 4," and that she was able to solve problems independently. (R. 303.) Other treatment providers noted that Plaintiff was "oriented" (R. 343, 555, 579, 590, 628, 641, 648, 677, 689, 702, 714, 725, 738, 757, 777, 784, 792, 809, 830, 837, 849, 867, 879, 893, 909, 3547), "oriented x 3" or "oriented to person, place, and time" (R. 289, 320, 469, 484, 489, 507, 515, 536, 820, 1054, 1058, 1068, 1079, 1083, 1090, 1109, 1116, 1124, 1132, 1153, 2479, 2511, 2601, 2667, 2701, 2739, 2777, 2810, 2870, 3195, 3235, 3263, 3275, 3279, 3283, 3527, 3535), or "oriented x 4" (R. 605, 745, 769). Still others noted that Plaintiff was able to follow commands (R. 930) or followed commands well (R. 941). A consultative examiner also found that Plaintiff's capacity for judgment did not seem overtly impaired and that her insight seemed fair. (R. 2329.)

As the ALJ also explained, Plaintiff routinely presented with her memory within normal limits. (R. 18.) The record supports that determination. On October 18, 2019, a consultative examiner noted that Plaintiff was able to perform short-term memory tasks and that Plaintiff's memory was intact. (R. 2329.) As the ALJ also noted, Plaintiff was able to relate her treatment history to providers—Plaintiff often related the history of the symptoms for which she sought

10

treatment. (*See e.g.*, 364, 408, 410, 493, 505, 512-13, 588, 603, 626, 639, 646, 660, 906, 938, 2666, 2698, 3052, 3084, 3230.) Treatment notes also explicitly indicate that Plaintiff provided her medical history when she sought to establish a treating relationship with a new primary care provider (R. 468), and that she was able to describe her follow-up appointments with other specialists (R. 512, 526, 533–34). She also informed providers about how medicines had worked for her in the past. (R. 767, 1053, 1063–64, 2698, 3052, 3084.)

In addition, although Dr. Naskar opined that Plaintiff had marked limitations in concentration and persistence (R. 2315–16), the ALJ found that this was inconsistent with record evidence demonstrating that Plaintiff had only moderate limitations in this area. The ALJ discussed that Plaintiff only had moderate limitations in this area as follows:

> With regard to concentrating, persisting, or maintaining pace, the claimant had a moderate limitation. Claimant alleges that she struggles to concentrate and persist to complete activities of daily living, and the record establishes a history of difficulty with task completion (Ex. 3E; Hearing Testimony). However, claimant's treatment providers have noted that she has the capacity to focus in clinical settings (Exs. 17F; 2F/23, 29; 5F/102; 22F/48, 238, 314; 3F/78, 127, 317; 8F/1, 7-8; 32F/26-27, 29-30, 36-37, 39-40, 42-43, 48-49, 54-55). Moreover, claimant has reported engaging in activities that demonstrate her capacity in this domain, such as caring for her son and dog, driving short distances, doing some chores, and painting (Ex. 3E; Hearing Testimony).

(R. 18.) Substantial evidence supports the ALJ's determination. The ALJ explained that Plaintiff was regularly noted to have been able to focus in clinical settings. The record supports that determination. A consultative examiner noted that Plaintiff appeared attentive, her concentration seemed intact, and that she did not appear to have any problems with focus. (R. 2329.) Other examiners routinely noted that Plaintiff was attentive (R. 2511) or alert (R. 289, 295, 320, 336, 343, 350, 356, 362, 367, 413, 420, 426, 433, 469, 485, 489, 508, 515, 555, 579, 590, 605, 617, 628, 641, 648, 677, 689, 702, 714, 725, 738, 745, 757, 769, 777, 784, 792, 809, 820, 830, 837, 849, 867, 879, 893, 909, 922, 930, 941, 958, 1048, 1054, 1058, 1068, 1079, 1098, 1117, 1124,

1132, 2480, 2511, 2545, 2602, 2632, 2667, 2701, 2739, 2777, 2810, 2839, 3057, 3195, 3276, 3280, 3283, 3528, 3536, 3547, 3862).

Likewise, Dr. Naskar opined that Plaintiff had marked limitations in adaptation (R. 2316), but the ALJ found that this was inconsistent with record evidence demonstrating that Plaintiff had only moderate limitations in this area. The ALJ discussed that Plaintiff only had moderate limitations in this area as follows:

> As for adapting or managing herself, the claimant had experienced a moderate limitation. Claimant alleges that she struggles with stress and the record establishes issues in that regard (Ex. 3E; Hearing Testimony). However, the record also reflects that claimant is capable of attending to her basic personal grooming, she drives at times, and she cares for her son and her dog, suggesting adaptability and self-management (Ex. 3E; Hearing Testimony).

(R. 18–19.) Substantial evidence supports the ALJ's determination. The ALJ accurately explained that the record reflects that Plaintiff was capable of attending to her basic personal grooming— treatment notes regularly noted that Plaintiff's grooming and personal hygiene were appropriate (R. 605, 663, 689, 714, 738, 746, 757, 769, 784, 809, 830, 867, 879, 893, 909, 941) or good (R. 930). Examiners also noted that Plaintiff appeared well developed and/or well-nourished (R. 469, 476, 480, 484, 489, 495, 500, 507, 515, 521, 528, 536, 590, 605, 628, 648, 663, 689, 702, 738, 745, 757, 768, 792, 808, 830, 837, 849, 866, 878, 893, 908, 941, 1048, 1054, 1058, 1064, 1068, 1075, 1079, 1083, 1090, 1097, 1116, 1132, 1138, 1146, 1153, 2479, 2511, 2545, 2576, 2601, 2631, 2667, 2739, 2777, 2810, 3057, 3194, 3235, 3263, 3275, 3279, 3283, 3304, 3326, 3340, 3527, 3535, 3547, 3555) or that Plaintiff was well appearing (R. 320, 555, 590, 605, 628, 648, 663, 689, 702, 714, 738, 745, 757, 768, 777, 792, 801, 808, 830, 837, 849, 878, 893, 908, 922).

The ALJ also noted that Plaintiff's activities were inconsistent with Dr. Naskar's opinion that she had marked limitations in understanding and remembering, concentration and persistence, and adaptation. (R. 18.) The record substantially supports that conclusion. Plaintiff reported that

12

she was able to manage money, drive short distances, count change, and pay bills; cook or prepare meals; perform light chores such as sweep her kitchen, vacuum occasionally, wipe counters, and do laundry; use the internet; and read "every now and then." (R. 2326.)

Plaintiff urges that the ALJ's discussion of the supportability and consistency factors are inadequate because the ALJ failed to cite specific evidence in support of his conclusions. (Pl.'s Statement of Errors 18, ECF No. 9.) But when evaluating the ALJ's supportability and consistency analysis, it is proper for a Court to look to the ALJ's specific discussion of Dr. Naskar's opinion as well as the ALJ's discussion of the record elsewhere in the determination given that it must be read as a whole. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (noting that the ALJ's entire decision must be considered); *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (affirming ALJ evaluation of opinion where "[e]lsewhere in her decision, the ALJ laid out in detail the treatment records" undercutting the opinion). This is true in all cases, but perhaps particularly true here, where the ALJ referenced the "paragraph B" criteria that was discussed elsewhere. (R. 26.)

Plaintiff also points to other of Dr. Naskar's examination findings and to the medications that Plaintiff was prescribed and asserts that they supported Dr. Naskar's more limiting opinion. (Pl.'s Statement of Errors 19, ECF No. 9.) But even if other record evidence might have supported a more restrictive RFC, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citations omitted). Such is the case here.

The Court additionally notes that the ALJ did not specifically discuss each of the opinions contained in the two documents authored by Dr. Naskar, including, for instance, Dr. Naskar's

13

opinion that Plaintiff's moderate and marked limitations would cause her to be off task 25% of a typical workday or be absent from work more than four days per month. (R. 26, 2314.) But the governing regulations do not demand such granularity. Instead, the regulations provide that "when medical sources provide multiple opinions . . . an ALJ is not required to articulate how he evaluated each opinion or finding individually but must instead articulate how he considered the opinions . . . from that source in a single analysis" using the five factors (*i.e.*, supportability, consistency, relationship with the claimant, specialization, and other relevant factors), as appropriate. §§ 404.1520c(b)(1); 416.920c(b)(1). The ALJ is simply "not required to articulate how [he or she] considered each medical opinion . . . from one medical source individually." *Id*. Here, the ALJ provided record-based reasons for finding unpersuasive Dr. Naskar's opinions that Plaintiff had marked limitations in certain broad areas of functioning. The ALJ thus impliedly discredited the specific functional limitations opined by Dr. Naskar that flowed from those broad areas. That analysis and articulation was sufficient in this case. Plaintiff's claim to the contrary lacks merit.

**B.      The ALJ's Failure to Accommodate Plaintiff's Absenteeism in the RFC**

Plaintiff maintains that the ALJ's RFC determination lacks substantial support because the ALJ failed to account for her absenteeism when assessing her RFC. (Pl.'s Statement of Errors 11–15, ECF No. 9.) In support of this argument, Plaintiff has listed the dates of all her medical appointments from June 1, 2016, until March 31, 2020, as proof that she would be absent more than one day per month, which is an amount that the VE generally indicated would be work preclusive at the February 8, 2021 hearing. (Pl.'s Statement of Errors 11–15, ECF No. 9.)

This claim lacks merit. The ALJ determined that Plaintiff could perform a range of sedentary work and explicitly wrote that this RFC was supported by several things, including Plaintiff's treatment history. (R. 27.) The ALJ also specifically discussed Plaintiff's treatment

history, including the number of times Plaintiff sought treatment during certain periods, and described details that might cast doubt on the necessity of all her treatments.

For instance, the ALJ noted that Plaintiff sought treatment from two different emergency rooms on multiple occasions in 2017 for lower back pain, but that narcotics were "deferred" at one visit because she sought treatment so often. The ALJ wrote:

> Between June and August 2017, claimant returned to two different emergency rooms multiple times with lower back pain. She presented with pain in the lumbar spine and trochanter; but intact strength and sensation, intact pulses, and no tenderness. It was noted that claimant had presented to the emergency room at least sixteen times in the last several months. Imaging showed mild and unchanged degenerative changes. Claimant was usually administered intravenous morphine or hydromorphone during these visits, and was encouraged to present for pain management. During one June 2017 visit it was noted that "narcotics were deferred at this time as [claimant] has returned to the emergency department six times in the past three weeks and routinely receives hydromorphone" (Exs. 3F/64-68, 147-154; 7F/596-610, 685-704, 729- 736).

(R. 21.) The ALJ also explained that Plaintiff sought treatment for lower back pain from an emergency room in 2018, but that an examiner noted that she appeared to be feigning pain symptoms. The ALJ wrote:

> Claimant returned to the emergency room with complaint of radiating lower back pain in December 2018. Claimant reported the pain was exacerbated after lifting a toddler. Claimant presented with spinal and lower extremity tenderness to palpation, but intact sensation and normal gait. It was noted that "upon opening the door [claimant] looks well and is conversing with family member at bedside. Upon entering the room, [claimant] rolls up on side, clutches back, and begins moaning." As there were no emergent findings, claimant was administered a dose of oxycodone but it was noted that "it would not be appropriate to give her narcotics for this." Claimant was further provided a prescription for methocarbamol (Ex. 22F/110-128)

(R. 22.) Therefore, the Court is not convinced that the ALJ failed to consider the frequency with which Plaintiff sought treatment when he assessed her RFC. Instead, it appears that the ALJ explicitly considered the number of times that Plaintiff sought treatment but determined that "good reasons" existed for "questioning the consistency" of Plaintiff's complaints. (R. 26.)

In any event, when considering an ALJ's alleged failure to consider a plaintiff's absenteeism when assessing his or her RFC, this Court has held that "evidence of frequent medical appointments alone is not enough" and that there must also be "evidence such as a medical source opinion about the likelihood of absenteeism caused by a claimant's impairments and the need for treatment during working hours." *Swafford v. Comm'r of Soc. Sec.*, No. 1:12cv19, 2013 WL 1196590, at *1 (S.D. Ohio March 25, 2013). Although Plaintiff has provided a tally of her medical appointment, she does not point to, and the Court has not located after independent review, any record evidence suggesting that Plaintiff's treatments could not be scheduled after working hours, on days that she was not scheduled to work,[5] or in a manner that generally minimized absenteeism. *See Bray v. Comm'r of Soc. Sec.*, No. 1:13-cv-00040, 2014 WL 4377771, at *3 (S.D. Ohio Sept. 3, 2014) (rejecting plaintiff's claim that frequent medical appointments would preclude full-time work given the absence of "specific affirmative evidence" indicating that the claimant "would have to be absent from work frequently during normal work hours and that those frequent absences would likely impair the [claimant's] ability to work"); *Monica W. v. Comm'r of Soc. Sec.*, No. 1:20-cv-767, 2022 WL 683461, at * 9 (S.D. Ohio March 8, 2022) (rejecting plaintiff's claim that a chart of her frequent appointments demonstrated that her absences would be work preclusive because "[a] backward looking record of appointments, as provided here, without a medical source opinion explaining the need for treatment during work hours" is not useful to determining an RFC). Accordingly, this contention of error is not well taken.

---

[5] Although the Court did not research every treatment date that Plaintiff listed, it notes that some of the listed dates fell on a Saturday or a Sunday, including, for example, November 19–20, 2016; February 26, 2017; March 12, 2017; March 19, 2017; March 26, 2017; April 1–2, 2017. (Pl.'s Statement of Errors 12, ECF No. 9.)

**C.     The ALJ's Reliance on the VE's Testimony**

Plaintiff additionally posits that the ALJ erred by relying on unclear testimony from the VE at step five. Specifically, Plaintiff asserts that the VE's testimony was unclear about whether a person who was limited to working with familiar others was able to perform the jobs that the VE identified in response to the ALJ's hypothetical question. This contention of error lacks merit.

At step five, an ALJ must consider a claimant's RFC, age, education, and work experience to see if the claimant "can make an adjustment to other work." 20 C.F.R. § 416.920(a)(4)(v). If a claimant can do so, then the Commissioner "will find that [the claimant] is not disabled." *Id.* If, however, the claimant "cannot make an adjustment to other work," the Commissioner will find that the claimant *is* disabled. *Id.* The "other work" to which a claimant must be able to adjust "must exist in significant numbers in the national economy"—i.e., "in the region where [the claimant] lives or in several regions in the country." *Id.* § 416.960(c)(1). The burden for establishing that "other work" exists in significant numbers in the national economy rests with the Commissioner, not the claimant. *Id.* § 416.960(c)(2).

To meet that burden, the Commissioner must make a finding "'supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs.'" *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *O'Banner v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978)). "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question." *Id*. If an ALJ relies on a VE's testimony in response to a hypothetical to provide substantial evidence, that hypothetical must accurately portray the claimant's limitations. *See Ealy v. Comm'r of Soc. Sec*, 594 F.3d 504, 516-17 (6th Cir. 2010).

Here, the ALJ asked the VE if a hypothetical person with Plaintiff's RFC, including a limitation to working in small familiar groups, could perform work that existed in significant

numbers in the national economy. (R. 74–76.) The VE testified in the affirmative; identified inspector, sorter, and addressing clerk as examples of work that such a person could perform; and testified that there were with 52,000, 51,000, and 50,000 of those jobs in the national economy respectively. (R. 76.)

Plaintiff's counsel subsequently questioned the VE if a hypothetical person limited to working with familiar individuals would be able to "control" with whom they worked. (R. 78.) The VE testified that such a hypothetical person would not be able to exercise such control, but that the lack of such control did not matter because the jobs that she had identified did not require people to work with others—familiar or not. (*Id*.) The following exchange took place:

> Q: . . . . One of the conditions in the hypothetical was that our individual is able to deal with small, familiar groups of eight to ten people in numbers. And familiar would be indicating that they're either in a – you know, that they know the person. Looking up the definition online says well-known from long or close association. So, my question is this. Do individuals – particularly in these unskilled positions that you described – do they have the ability to control whom they work with?
>
> A: No. But the jobs don't require them too – while they may be in proximity in the same room they're not working with somebody doing any extended task or things like that that would interfere. So, they're primarily working independently.
>
> Q: Okay.
>
> A: But not in isolation. Of course there are other people around.
>
> Q: All right.
>
> A: And no, they don't have control over, you know, who is employed.
>
> Q: Okay.

(R. 78.)

In short, the ALJ asked the VE a hypothetical question that contained all of Plaintiff's limitations, including the limitation to working in small groups. In response, the VE identified three jobs and their attendant numbers and then testified upon cross examination that an inability

18

to control with whom one worked did not impact those jobs because they entailed independent work as opposed to group or teamwork. (*Id*.) Accordingly, the ALJ could rely on the VE's testimony to find that Plaintiff could perform work that existed in significant numbers in the national economy. Therefore, Plaintiff's argument lacks merit.

## V.     CONCLUSION

In sum, the Court finds that none of Plaintiff's contentions of error have merit. Therefore, the Court **AFFIRMS** the Commissioner's non-disability determination and **OVERRULES** Plaintiff's Statement of Errors.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE